This is Marlon Sender. Good morning, Your Honor. Good morning. We are ready. However, since I am still battling the progressive effect of a nasty flu bug, my associate, Mr. Gregory Bolt, will be presenting our investigation. All right. Mr. Bolt, you don't have the magic clock. I'm passing the phone to you, Ms. Momotaro. Okay, you don't have the magic clock in front of you, so I'll tell you what I'm going to do. When you get down to about two minutes, I'll let you know because you may want to save time for rebuttal. Very well. This is Gregory Bolt speaking. Mr. Sender is passing me the phone. You may proceed. Thank you, Your Honor. Your Honors, may it please the Court, the issue before the Court is what is legally required to render a fine as an application for asylum? File contractor A1-1997 is frivolous, and with it, imposition. I think it would be helpful if you could just speak a little louder because it's a little hard to hear. I'm sorry. Perfect. Thank you. Suffering the effects of the flu as well. Sorry. We're glad you're on the telephone. Thank you. And with the imposition of a lifetime ban on immigrating to the United States for the applicant, ACFR Section 208.20 specifically states that such a finding must establish that a material element in the subject application was deliberately fabricated, and neither the immigration judge's decision nor the subsequent decision by the Board of Immigration field in this matter addresses either of these requirements. I believe. Could you please address the effect of the earlier memorandum disposition in the earlier case? Yes. The first petition that was filed as a result of the initial decision by the immigration judge was filed and challenged the issue of credibility and seemingly also challenged the issue of frivolity. While the decision was rendered untapped in the petition before review, it was filed in court. And prior to the panel, the first panel issuing a decision in the matter on October 22nd, 2003, the BIA had already vacated that decision to review. So when the first panel, which addressed the petition on October 22nd, 2003, issued its unspoken memorandum, it was unaware that the BIA had already vacated the order to review. I'm having trouble hearing you. I'm not sure whether it's the telephone or what, but maybe you just slow down a little, see if that helps. My question on that is you argue that the prior panel didn't have jurisdiction in effect because of this intervening BIA order. But it seems that whether it was you or a different counsel, and I use you generically, but Guzman-Garcia's counsel never advised the court of the intervening order and after the disposition came out never asked to withdraw the mandate. So why isn't that order binding as a res judicata? As a res judicata, I would raise two issues. The first issue would be that since the first order was vacated almost a month prior to the first panel's decision on this matter, that there was no valid pending legal judgment or order before the first panel. Well, there was, actually, because it's really very complicated. Because as I understand it, before the order issued, the BAC decided on the motion to reopen and then to reinstate the order. So there was an order, but the petition was a different petition. Correct. And interestingly enough, in reviewing the BIA's second order, the order of September 24, 2003, they also raised an interesting issue because in there it was seen by the language that they used that they never considered the frivolous filing in the first order. They never considered what, I'm sorry? They never considered the frivolous filing. An administrative record on page 2, the BIA's decision of September 24, 2003. In the second paragraph about midway through, it states that, I quote, moreover, the immigration judge found that the respondent knowingly filed frivolous filing applications after receiving proper notice of the consequences of such a filing period. The respondent did not specifically appeal to the termination comma, which would be in any event find to be supported by the record. I would offer additionally, in spite of the fact that the order was designated not validly in front of the first panel, that the administrative remedy had not been sought by the petitioner in the first petition. What's your best authority for saying that the first panel's decision somehow is invalid or without jurisdiction? I would say two. The first authority would be that under general race judicata, there was not a valid judgment before the court. And the second argument would be that the petitioner had not exhausted administrative remedy. Well, if that's true, then you're going to lose anyway. I mean, if you hadn't exhausted it, then that non-exhaustion carries over to now. So I don't see how that helps. The first one is I'm having some trouble understanding because there was an order at the time. I mean, I thought we established that there was an order. In fact, it was sort of the same order because all the BIA did was reinstate the IJ's original order. So there was an order, but the petition was filed with the – that we acted on earlier was filed with regard to an earlier BIA order. But the order of removal, which was issued by the IJ, was the same one the second time as the first time. That would be correct, Your Honor. But the difference would be if you look at the BIA's decision of September 24, 2003, they reviewed this decision apparently with revolving mind, which they're saying they never looked at in their first decision, the initial decision. Well, I guess the simpler question is, given all this, we're now three years after the September 2003 order, why didn't you advise the Ninth Circuit through a petition for rehearing or motion of this order and ask for either a revision of the panel opinion or a recall even of the mandate in which I think was December of 2003? What this office did, Your Honor, was we subsequently filed a petition for review on the second one. Right. And so, I mean, to me that seems that you created this whole situation we're in. You filed a whole separate petition and ignored this other order over there and didn't file it as a related petition, and so now it comes up through its own separate channel. You wouldn't be here if you had filed something with the original panel. Well, how we decided to address it, this is looking at it in retrospect now in hindsight, but we filed the petition and in the petition itself we identified the previous case. My helper referenced it and did so as well in the petition, and we left it at discretion of the court to handle that. It's not the case. Well, that supposes that we're going to know that there are two cases pending in the court when we have 12,000 cases a year. It identified it by case number. Typically, we see prompt responses from the clerk office regarding access to consolidation of separate petitions. It would be quite candid with the court. But you have an obligation, which is stated in the rules, to tell us about related cases, and you didn't do it. It's right in the petition for review. No, it's not. It's not filed as a related case. There's a notice of related case that's required under the rules, and that would be picked up. Well, why don't you save some time for rebuttal? You're down to about a minute and a half, and we'll hear from the government. Okay. Good morning. May it please the court. Michelle Desore for the government. The panel's October 2003 ruling is res judicata and governs this matter, and Ms. Garcia cannot relitigate the issue as a frivolous asylum application. Ms. Garcia had a full and fair opportunity to litigate the matter. She had a hearing before the immigration judge. She appealed to the board, filed a petition for review with this court, and Ms. Latour, again, our phone system is not terrific. So if you could slow down a little, it would help because it's not because you're talking too fast, but because the phone system is slurring your words. I apologize. As I was saying, Ms. Garcia has had a full and fair opportunity to litigate this matter before the court of appeals, and the court issued a ruling, a final ruling on the question whether she had filed a frivolous asylum application in favor of the government, and that ruling is final, and she cannot relitigate the matter. And as much as she claims that the board's 2003 decision, September 2003 decision, has some effect on the application of res judicata in this case, several decisions of this court have recognized that the principles of res judicata apply to this court's exercise of jurisdiction. Even though this court is a court of limited jurisdiction, the court has the authority to determine its jurisdiction, and it did so in this case in the October 2003 decision. And having done so, that's... Of course, we weren't informed by anybody, including the government. Whatever issue there is with regard to the petitioner's failure to inform us of the other case goes equally to the government. Nobody informed us. That may be true, Your Honor, but in this proceeding, it's the petitioner who is seemingly trying to collaterally attack the court's prior exercise of jurisdiction. That's not my question. My question was originally, at the time of the original proceeding, neither party, both parties had an obligation to inform the court that there were related cases, and neither party did. Well, with respect to related cases, I'm not sure that there was a... When this matter was pending in the court of appeals, I'm not sure that there was another matter that was pending in the court of appeals at that time. It was before the mandate issued in the other case, is my understanding. Because they were almost simultaneous. So at the time that any petition for... Very soon after, I mean, within days. I think the petition for review was filed two days after the court issued its ruling, Your Honor. Right. And the mandate hadn't issued at that point. That's correct, Your Honor. But I think that the petitioner was in a better position in this case, having been counsel for the petitioner in the first petition for review case, and also in this petition for review case, to inform the court as to what was happening with any motions to reopen that was pending at the court of immigration appeals. Just briefly, I would like to hear a little bit about the merits of the case. The court of the I.J. opinion is somewhat unclear as to whether it's finding frivolousness, which of the applications for asylum it's finding frivolous. And that probably matters, doesn't it? Well, it does matter, Your Honor. I think that the immigration judge's decision in the record fully supports that the immigration judge found that she filed a frivolous application in 1998. And that her testimony... Wait, what does he say then? He seems to wander around as to which one he's talking about. He says at least one, but he never says which one. Well, I think that by the end of the decision at the record at page 66, what the immigration judge explicitly states is that she came to the immigration court hearing, and what he states is, I believe that this was an ongoing fabrication on her part. These applications were frivolous. And what the immigration judge did was... Excuse me, are you reading from page 60, did you say? I'm sorry, 66. All right, thank you. And what the immigration judge did in this case was find no less than 12 inconsistencies that I might note are uncontested in this particular petition for review, and that this court found in its 2003 decision that she had not identified any compelling evidence to revert that determination. But more importantly, what's reflected in the record here is that Ms. Garcia appeared at her 2001 hearing. She testified that she feared going back to Guatemala because of the government, but she explicitly stated in her 1998 application that she had a fear of the guerrillas. Not only that, but she went to the 2001 hearing and did not testify at all that her home had been bombed in 1982, and she explicitly stated that as one of the reasons that she feared returning to Guatemala in her asylum application. So those are material inconsistencies that are reflected in the record and that were identified in the adverse credibility finding by the immigration judge. But the immigration judge, under those circumstances, very reasonably found that she lied in her application about the basis for her fear and about the event. But you're not really answering the question I asked, because what he says is in light of the falsification of information contained on the application, and then he says, I will find that this individual knowingly and intentionally filed at least on one occasion or purpose the application, but he doesn't say which one. And it has to be the 1998 one or else it doesn't work, because only at that point does the frivolousness rule even apply. And so I don't see a finding that in 1998, because later on he's talking about the first two applications. And then later on she said, so I would find that she has fabricated the information in all three applications, but that doesn't specifically deny her applications for asylum. But in terms of the frivolousness, it's never really pinpointed to any particular application. I think that the information or the immigration judge's rulings between pages 66 and 67 are sufficient to support a frivolity finding with respect to the last application. At the very bottom of page 66, after he talks about how this is an ongoing fabrication on Garcia's part, the immigration judge states, even the last one filed with the assistance of her attorney is replete with contradiction and completely foreign to the theory she has testified to as to why she cannot return to Guatemala today. That goes directly to the 1998 application and shows the materiality of the inconsistencies and is supportive of the frivolity finding with respect to the 1998 application. And as much as Ms. Garcia tried to explain the reasons for the inconsistencies in her case, the record didn't support the explanation and the immigration judge reasonably rejected them. She testified that she studied English in Guatemala, that she studied it further when she was here in the United States, and that she got her GEP in English. Under those circumstances, the immigration judge reasonably determined that her explanation was not valid. So where is the frivolous finding actually beyond the inconsistencies and the lack of credibility with respect to the various applications? I think the explicit finding is found on page 66, where the court says that he believes that this is an ongoing fabrication on her part. And then furthermore, where the immigration judge- So what's the difference? I guess that's kind of a question I had is sometimes when people fabricate, you say, you know, you're just lying. To me, that doesn't necessarily equate to being frivolous. I mean, is that the same thing? I think there have been some courts that have found, and I apologize to the court, I don't know whether these are unpublished rulings or they're published rulings, but where lies and fraudulent applications are enough to support a finding of frivolity, and that's what the immigration judge did here in that case, said that-or indicated that Ms. Garcia was lying in her applications. It was part of an ongoing fabrication, and that's what the regulation requires, that any part of the material elements of the application are deliberately fabricated. Just for your information, you have about a minute and a half left. Okay. Finally, though, isn't there also a procedural component of this? That is, whether-the consequences of filing a frivolous application are extreme. And, in fact, findings of frivolity are extremely rare, despite the huge number of adverse credibility findings. And my understanding is that the regulations in our case law require that there has to be specific opportunities to account for discrepancies with regard to frivolousness. Did that happen in the hearing here? Was she specifically asked to account for the various discrepancies that ended up underlying the frivolity determination? I think that she was, Your Honor. She was asked very explicitly and pressed on the question of who she feared if she returned to Guatemala. And, in the end, she finally stated the government. I believe it would be the government. I don't have a record site for that. Furthermore, she was asked to testify by her counsel, as a matter of fact, about the incidents that she experienced in Guatemala. And she came up with one attack on her home that occurred in 1989. But that's not what's required, as I understand it. What's required is for someone to say to her, well, look, you said X and then you said Y. How do you account for that? Did that happen? I think that it did, Your Honor, with respect to those particular instances and then also with respect to the attack on her home. They gave her an opportunity to explain that, that she was either vague or she didn't come up with the testimony to match her application at all. And then with respect to the English-speaking, her English-speaking ability, she was questioned very specifically about that. Thank you. I think we have your argument in mind. We'll hear rebuttal from Mr. Bolt. Thank you, Your Honor. I would note that, once again, that the issue of materiality and deliberateness has not been addressed by the defendant. And it has not been addressed by the immigration judge. It was not addressed by the BIA. It was not addressed on a brief. And it has not been addressed here today in court. What hasn't been addressed? I'm sorry. Yes. The specific elements that are required in ACFR Section 208.20 is determining an asylum application. Such as? There must be specific findings that anything that was fabricated was done so deliberately and it must be also material to the underlying claim. But the I.J. did actually use words that were virtually identical about fabrication and said what the problem was. And it would appear that some of those assertions made by the immigration judge were not specifically supported by the record. I would also like to go back to the issue about the second BIA order being in effect when the first panel issued its initial decision on this matter. I would note that although there was a valid order in effect at the time the first panel issued its decision at a random issue, that practice order was actually not before that panel. And it did not have an opportunity to review such a relevant issue as whether or not administrative remedies had been exhausted on the frivolity issue. If that had been the case, the first panel may not have even addressed the issue of frivolity because it would not have been properly in front of that panel. All right. Thank you. Unless there's any further questions. We have your argument. Thank you for appearing by telephone, and we appreciate doing that for both counsel in order to accommodate schedule of one of the counsel. The case of Guzman-Garcia is submitted.
judges: McKeown, Berzon, King